UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHIRLEY LOIS HERREN,

    Plaintiff,

        v.                                 No. 3:16-cv-1183(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Shirley Lois Herren's, application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1]

Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 16]. The Commissioner, in turn, has moved for an order

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

affirming her decision. [Doc. # 17].  For the reasons discussed below, Plaintiff's motion is granted and the Commissioner's motion is denied.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ."  42 U.S.C. § 405(g).  Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  *Williams*, 859 F.2d at 258.

## BACKGROUND

a. **Facts**

Plaintiff filed her applications for DIB and SSI on December 3, 2012, alleging a disability onset date of May 15, 2012. Her claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On December 4, 2014, a hearing was held before administrative law judge Ronald J. Thomas ("the ALJ"). On February 27, 2015, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review of the ALJ's unfavorable decision. This action followed.

Plaintiff was 30 years old on the date of the hearing before the ALJ. (R. 38). At the time of the hearing, Plaintiff was living in an inpatient treatment facility. (*Id.*). She has a high school education. (R. 40-41). Plaintiff last worked in May 2012 as a waitress. (R. 41). She has additional past work experience as front desk agent at several hotels. (*Id.*). Plaintiff is alleging disability based on both physical and mental impairments. The parties have stipulated to Plaintiff's medical chronology as set forth in Doc. # 16-2. The Court adopts this medical chronology and incorporates it by reference herein.

b. **The ALJ's Decision**

The ALJ followed the sequential evaluation process for assessing disability claims.[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations. If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional

alleged onset date. (R. 20). At step two, the ALJ found the following severe impairments: depressive disorder; anxiety disorder; polysubstance abuse in remission; lower back pain; bilateral foot pain. (*Id.*). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 20-21). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> Plaintiff can perform sedentary work except she is limited to performing simple, routine, repetitious work with only occasional interaction with the public, co-workers, and supervisors. She is further limited to only occasional bending, twisting, squatting, kneeling, crawling, climbing, and balancing. She cannot operate foot controls bilaterally.

(R. 21-26). At step four, the ALJ found Plaintiff was unable to perform her past work. (R. 26). Finally, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 26-27). Specifically, the VE testified that the person with the assessed RFC could perform the positions of address clerk, table worker, and cleaner. (*Id.*). Accordingly, the ALJ found Plaintiff not to be disabled.

## **DISCUSSION**

The ALJ found Plaintiff has moderate difficulties with concentration, persistence, or pace, but does not account for this finding in the RFC. While the RFC limits Plaintiff to "simple,

---

capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. §§ 404.1520 (a)(4)(i)-(v); 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on this last step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

4

routine, repetitious work and occasional interaction with others," these limitations do not adequately address deficiencies in concentration, persistence, or pace in this matter.

In *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014), the court examined a case where an ALJ found a claimant to have "moderate difficulties … in maintaining concentration, persistence, and pace" at the second step of the evaluation process, and then assessed an RFC that did not "expressly include" those limitations. The ALJ did, however, pose a hypothetical question to a vocational expert including the assessed RFC and a limitation to "simple, routine, low stress tasks," to which the vocational expert responded that were jobs available for such an individual. *Id.* at 151. The Second Circuit found that the ALJ's failure to incorporate the non-exertional limitations into the hypothetical was harmless because the hypothetical "implicitly accounted for" the limitations and because the record demonstrated the claimant could perform "simple, routine, low stress tasks notwithstanding … her limitations in concentration, persistence, and pace." *Id.* at 152. In particular, there was opinion evidence from a consultative examiner that claimant "appeared capable of maintaining attention and concentration for tasks and could regularly attend to a routine and maintain a schedule." *Id.* at 150-51.

In the instant matter, the record does not demonstrate that Plaintiff can maintain concentration, persistence, and pace in a job involving simple, routine, repetitious work. First, the opinion evidence indicates that Plaintiff would have at least moderate difficulties in staying on task throughout a workday. Plaintiff's mental health treatment providers completed a mental health RFC assessment in October 2013.[4] They found that Plaintiff was not significantly limited in carrying out very short, simple instructions. (R. 790). They found Plaintiff was moderately

---

[4] While the ALJ attributes the assessment to Megan Stone, an APRN, it is clear that it is signed by Stone, by a second APRN, and by Dr. M. Qureshi, M.D. (R. 793).

5

limited in carrying out detailed instructions; in sustaining an ordinary routine without special supervision; and in making simple work-related decisions. (*Id.*). Further, they found Plaintiff was markedly limited in maintaining attention and concentration for extended periods; in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; in working in coordination with or proximity to others without being distracted by them; and in completing an normal workday/workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.*).

The ALJ declined to give great weight to the opinion, finding it "vague and unsupported by objective medical findings." (R. 26). Specifically, the ALJ stated that the opinion did not list "examination results or diagnostic imaging studies," and that the "basis for the sweeping and conclusory findings … is entirely unclear." (R. 25). It was error for the ALJ to dismiss the opinion on this basis. The form the treatment providers completed did not require them to list examination results in support of their opinion of Plaintiff's limitations in concentration, persistence, and pace. *See* R. 790. The information the ALJ seeks was not asked for. The one section of the form that does ask the providers to list the basis of their opinion was completed; the providers explained their opinion that Plaintiff's symptoms would affect her ability to work: "Due to mood swings from Bipolar Disorder and extreme anxiety including panic attacks, [Plaintiff] has a very difficult time functioning in a work environment." (R. 789).

If the ALJ felt that the basis of the opinion – the only opinion in the record from a treating source – was unclear or unsupported, he could have sought clarification or additional information. *See Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to

6

seek out more information from the treating physician and to develop the administrative record accordingly."). The ALJ should seek out additional information, when necessary, even when the claimant is represented by counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Thus, an ALJ "commits legal error by rejecting [a] treating physician's medical assessment without fully developing the factual record." *Pickering v. Colvin*, No. 14-CV-6902 (RLE), 2016 WL 554589, at *12 (S.D.N.Y. Feb. 10, 2016). Here, the ALJ erred by dismissing the opinion on the basis of it being vague without seeking clarification or additional information. This is particularly problematic because the opinion dismissed was the only one completed by a treating source.

Further, Dr. Cosentino, who conducted a mental status examination on April 27, 2013, found that although Plaintiff "appears able to understand, carry out, and remember basic instruction," her "[a]ttention and concentration were in the borderline to low average range as evidence by performance on digit span forward digit span backward and serial threes." (R. 701-02). Again, this opinion cannot be said to demonstrate that Plaintiff can maintain concentration, persistence, and pace in a job involving simple, routine, repetitious work. In fact, the opinion actually highlights the distinction relevant to the Court's finding here: that an ability to perform simple, routine, repetitious tasks is not necessarily commensurate to an ability to stay on task for an 8 hour workday.

In addition to the medical opinions, other evidence in the record fails to demonstrate that Plaintiff can maintain concentration, persistence, and pace in a job involving simple, routine, repetitious work. Plaintiff regularly complained of difficulties maintaining concentration. (R. 398, 710, 722, 739, 899). And, Plaintiff testified that she was unable to perform her waitressing job adequately, in part because of her difficulties with concentration. (R. 55). In all, the record

7

does not show Plaintiff can maintain concentration, persistence, and pace within the parameters of the assessed RFC.

Also unlike in *McIntyre*, the hypothetical to the VE did not implicitly account for Plaintiff's limitations in maintaining concentration, persistence, and pace. The hypothetical presented to the VE upon which the ALJ relied to meet the Commissioner's step five burden was the exact RFC the ALJ ultimately assessed. In fact, the VE testified that the jobs he found Plaintiff capable of performing involved an individual who would be on task "80 and 90% of the time" and that "it would be expected that the productivity would be consistent with the co-workers." (R. 72). In response to a different hypothetical, though, one that specifically included limitations regarding concentration, persistence, and pace, the VE testified that if an individual was unable to stay on task more than 80% of the time, there would be no jobs available to that person. (R. 67-68).

Thus, even reading the evidence to assume Plaintiff's limitations in this area were only moderate, here, unlike in *McIntyre*, no treating or examining physician opined that Plaintiff, despite those limitations, could maintain concentration, persistence, and pace. And, the evidence relied upon at step five did not implicitly account for these limitations. In all, since the medical evidence fails to demonstrate that Plaintiff can "engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," *see McIntyre*, 758 F.3d at 152, and since the RFC failed to "otherwise implicitly account for" Plaintiff's limitations in concentration, persistence, and pace, *see id.*, the ALJ's RFC assessment cannot stand.

Accordingly, this matter is remanded to the Commissioner for additional proceedings. Upon remand, the ALJ will make a new RFC finding that accounts for all of Plaintiff's

limitations.[5] The ALJ will also re-weigh the opinion evidence. Then, the ALJ will, if necessary, continue through the sequential evaluation process.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to reverse, or in the alternative remand [Doc. # 16] is GRANTED and the Commissioner's motion to affirm [Doc. # 17] is DENIED. This case is remanded to the Social Security Administration for further proceedings consistent with this Ruling.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Ruling that remanded the case.

SO ORDERED, this  16th  day of February, 2018, at Bridgeport, Connecticut.

    */s/ William I. Garfinkel*
    WILLIAM I. GARFINKEL
    United States Magistrate Judge

---

[5] In so doing, the Commissioner will likely wish to further develop the record to obtain additional opinion evidence from Plaintiff's treatment providers.